**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2337
_____

AYYAKKANNU MANIVANNAN,

v.

U.S. DEPARTMENT OF ENERGY
(D.C. No. 2:18-cv-00297)

AYYAKKANNU MANIVANNAN,

v.

UNITED STATES OF AMERICA
(D.C. No. 2:19-cv-00828)

Ayyakkannu Manivannan,
Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(W.D. Pa. Civil Action Nos. 2:18-cv-00297 & 2:19-cv-00828)
Magistrate Judge: Honorable Maureen P. Kelly
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 23, 2025

Before:  BIBAS, FREEMAN, and NYGAARD, <u>Circuit Judges</u>

(Opinion filed: June 24, 2025)

_____

OPISION[*]
_____

**PER CURIAM**

Pro se appellant Ayyakkannu Manivannan appeals from the District Court's grant

of summary judgment for defendants on three of his claims.[1] For the reasons that follow,

we will affirm the District Court's judgment.

I.

Manivannan was employed by the DOE as a materials specialist at the National

Energy Technology Laboratory ("NETL") in Morgantown, West Virginia from 2005

until 2016.[2] In 2014, the Court of Common Pleas of Centre County, Pennsylvania, issued

a Protection from Abuse order against Manivannan. The order prohibited Manivannan

from having contact with a former DOE student intern. Manivannan was eventually

criminally charged in Centre County with stalking and harassing the intern.

Soon after the criminal proceedings began, the DOE launched an internal

investigation of Manivannan and placed him on administrative leave. In January 2016,

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] A United States Magistrate Judge presided over the case as the District Court pursuant to the parties' consent. See 28 U.S.C. § 636(c)(1).

[2] Because we write primarily for the parties, we will recite only the facts necessary for this discussion. These facts are undisputed unless otherwise noted.

the investigation resulted in the production of a 30-page report supported by over 1,500 pages of interview transcripts and documents. Later that month, Manivannan was additionally criminally charged in Centre County with five felony counts of unlawful use of a computer.

After learning of the criminal charges, NETL attorney Mark Hunzeker contacted the Centre County District Attorney's ("DA's") Office; he testified that he reached out to help prepare for any potential forthcoming administrative action within the agency regarding Manivannan. In March 2016, the DA's Office sent the DOE a subpoena requesting documents relating to the criminal charges against Manivannan.[3] Hunzeker collected responsive documents and his supervisor returned them to the DA's Office.

A jury trial was held in April 2016. A DOE employee testified about several documents, including documents that were disclosed to the DA's Office by the DOE. These documents included hotel and rental car receipts regarding some of Manivannan's business travel expenses and emails from the intern and from Manivannan. Manivannan's defense exhibits also included documents that were disclosed by the DOE.

Manivannan was acquitted of the stalking charge but convicted of harassment and

---

[3] The subpoena requested: (1) "agency records between June 2014 and July 2014 reflecting any official travel and/or other time and attendance data for that time frame for . . . Manivannan"; and (2) "official electronic communications between . . . Manivannan and [the intern] from January 2014 through August 2014, including emails, IP addresses, text messages, and phone calls using [DOE] issued equipment provided to . . . Manivannan" or the intern. Appellant's App. at 97.

the unlawful use of computer charges. His convictions were then vacated on appeal due to an expert testimony issue. Commonwealth v. Manivannan, 186 A.3d 472, 488 (Pa. Super. Ct. 2018). The case ended in a nolle prosequi disposition at the request of the Commonwealth. By then, Manivannan had resigned from the DOE.

Manivannan has filed several lawsuits regarding these events. As relevant here, in 2018, Manivannan initiated a lawsuit against the DOE alleging violations of the Privacy Act, 5 U.S.C. § 552a. In 2019, he filed another action against the United States bringing claims under the Federal Tort Claims Act ("FTCA"). Both cases were counseled and were subsequently consolidated. The District Court initially dismissed Manivannan's claims for lack of subject matter jurisdiction, concluding that they were not reviewable pursuant to the Civil Service Reform Act ("CSRA") because they arose in the context of Manivannan's federal employment.

On appeal, we affirmed in part and reversed in part. Manivannan v. U.S. Dep't of Energy, 42 F.4th 163, 166 (3d Cir. 2022). We concluded that while many of Manivannan's claims were precluded, the District Court had jurisdiction over three of his claims because they did not concern employment actions covered by the CSRA. These remaining claims alleged: (1) that defendants violated the Privacy Act by disclosing records to the DA's Office; (2) intentional infliction of emotional distress ("IIED"); and (3) conversion of Manivannan's personal property after he resigned from the DOE.

On remand, the District Court dismissed the conversion claim as time-barred and

4

dismissed the IIED claim in part; the IIED claim could proceed only to the extent that it was based on the agency's participation in Manivannan's criminal proceedings. The District Court later granted summary judgment for defendants on Manivannan's remaining claims. Manivannan timely appealed and proceeds pro se on appeal.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's dismissal of a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). See Fowler v. UPMC Shadyside, 578 F.3d 203, 206 (3d Cir. 2009). We also exercise plenary review over the District Court's summary judgment ruling. See Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence is sufficient for a reasonable factfinder to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We may affirm on any basis in the record. See Murray v. Bledsoe, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam).

## III.

We agree with the District Court's resolution of Manivannan's claims. First, the District Court appropriately dismissed his conversion claim under the FTCA as time-barred. The FTCA "provides that a tort claim against the United States shall be forever

5

barred unless it is presented to the appropriate Federal agency within two years after such claim accrues' and then brought to federal court within six months after the agency acts on the claim." United States v. Wong, 575 U.S. 402, 405 (2015) (internal quotation marks and citation omitted). The six-month limitations period to bring an FTCA claim in federal court is triggered by the mailing date of the agency's final denial of an administrative claim. See 28 U.S.C. § 2401(b).

In 2018, Manivannan filed an administrative claim seeking the return of personal property that he alleged was retained by the DOE after he resigned. He filed several other administrative claims that year. On June 11, 2018, the agency denied Manivannan's personal property claim. Manivannan sought reconsideration, which was denied on January 10, 2019, noting that Manivannan had not provided evidence to support his personal property damage claim. The denial notice stated that it was a final denial sent by certified mail and that Manivannan had six months after the mailing date of the denial to bring an FTCA claim in federal court.

Manivannan initiated his lawsuit bringing a conversion claim on July 11, 2019, one day past the six-month deadline. Attached to his complaint, he included his administrative claims and the responses to those claims, including the January 10, 2019 final denial. The District Court concluded that it was undisputed and apparent from the documents attached to Manivannan's complaint that Manivannan did not bring his

6

conversion claim in federal court within 6 months of the January 10, 2019 notice denying reconsideration of his personal property claim.

On appeal, Manivannan argues that the District Court erred by failing to analyze the merits of his conversion claim, and he maintains that the mailing date of the reconsideration notice was not apparent on the face of his complaint.[4] However, in our review of the denial of his claim, we consider Manivannan's complaint, any "document integral to or explicitly relied upon" in framing the complaint, Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (internal citation and emphasis omitted), and any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document," Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Manivannan's counseled complaint included the January 10, 2019 notice as an attachment. Although the FTCA statute of limitations can be equitably tolled, see D.J.S.-W. by Stewart v. United States, 962 F.3d 745, 749-50 (3d Cir. 2020), Manivannan makes no arguments in support of equitable tolling in his opening brief. Accordingly, the District Court correctly concluded that this claim was time-barred.

Next, the District Court properly granted summary judgment for defendants on Manivannan's Privacy Act claim. Manivannan has maintained that the DOE violated the

_____

[4] We do not consider arguments Manivannan raises for the first time in his reply brief regarding any of his claims. See Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist., 877 F.3d 136, 146 (3d Cir. 2017).

7

Privacy Act when it provided documents from his employment to state prosecutors during his criminal prosecution. Subject to twelve enumerated statutory exceptions, the Privacy Act prohibits federal agencies from disclosing a "record which is contained in a system of records" without an individual's consent. See 5 U.S.C. § 552a(b). To establish a Privacy Act claim, a plaintiff must produce evidence that: "(1) the information is covered by the Act as a 'record' contained in a 'system of records'; (2) the agency 'disclose[d]' the information; (3) the disclosure had an 'adverse effect' on the plaintiff[;] . . . and (4) the disclosure was 'willful or intentional.'" Quinn v. Stone, 978 F.2d 126, 131 (3d Cir. 1992).

Here, the District Court concluded that summary judgment was appropriate on five alternative grounds, as it determined that, regardless of whether the disclosed documents were records covered by the Privacy Act: (1) three enumerated disclosure exceptions applied under 5 U.S.C. § 552a(b); (2) Manivannan could not show that the disclosure was willful or intentional; and (3) he could not establish actual damages. The Government argues on appeal that Manivannan has forfeited any challenge to the resolution of this claim because his opening brief does not address several of the District Court's alternative rulings. C.A. 27 at 46-49. We agree.

In his opening brief, Manivannan challenges the District Court's application of one of the three enumerated statutory exceptions — the routine use exception, 5 U.S.C. § 552a(b)(3) — and makes conclusory assertions that the disclosure was willful or

8

intentional. However, he does not discuss or challenge the District Court's three alternative conclusions, each of which presents an independent barrier to relief. Generally, litigants forfeit issues that they fail to develop in an opening brief, see In re Wettach, 811 F.3d 99, 115 (3d Cir. 2016), and that rule applies to Manivannan's deficient briefing.

Although we may reach forfeited issues when "truly exceptional circumstances" are presented, such circumstances are very limited. See Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist., 877 F.3d 136, 147 (3d Cir. 2017). Exceptional circumstances can arise "when public interest requires that the issue[s] be heard or when a manifest injustice would result from the failure to consider the new issue[s]." Id. (citation omitted) (alterations in original). However, no extraordinary circumstances are present here. Cf. Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013) (explaining that pro se litigants "must abide by the same rules that apply to all other litigants"). In any event, for the reasons provided by the District Court, we agree that Manivannan did not establish that the disclosures were "intentional or willful" such that the conduct was "so patently egregious and unlawful that anyone undertaking [it] should have known it unlawful." See Laningham v. U.S. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (internal quotation marks and citation omitted).

Finally, for Manivannan's remaining IIED claim, the District Court concluded that he had not establish one of the threshold requirements — "extreme and outrageous

9

conduct" by the DOE.[5] See Hoy v. Angelone, 720 A.2d 745, 753 (Pa. 1998).  His only mention of this issue in his opening brief is his assertion that the DOE "created false and inaccurate records and then worked to subpoena itself all in the hopes that Dr. Manivannan would suffer harm as a result."  Appellant's Br. at 20.  He cites no authority or record evidence to support this argument.  As discussed above, the record shows that the DOE provided some of Manivannan's work travel records and certain emails to the DA's Office in response to a subpoena regarding a pending criminal prosecution.  He has not established that this conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."  See Hoy, 720 A.2d at 754 (citation omitted).  Summary judgment was thus appropriately granted on his IIED claim.

Accordingly, we will affirm the judgment of the District Court.

---

[5]  Manivannan does not challenge the partial dismissal of his IIED claim prior to the District Court's grant of summary judgment on the remainder of the claim and has thus forfeited that portion of his claim on appeal.  See Wettach, 811 F.3d at 115.